## Case No. 5,549.

### In re GOODWIN.

[5 Dill. 140; [1] 17 N. B. R. 257.]

Circuit Court. E. D. Missouri. 1879.

ACCOMMODATION MAKER ENTITLED TO RIGHTS OF A SURETY AS AGAINST A HOLDER WITH KNOWLEDGE OF THE TRUE RELATION OF SUCH MAKER.

1. An accommodation maker of a note is not, as respects a holder with notice, the principal debtor; and where the holder, with knowledge that the maker is an accommodation maker, without his knowledge or consent gives time, by a valid contract, to the party who is in fact the principal debtor, the accommodation debtor is entitled to the rights of a surety, and is discharged, although the holder did not know, when he took the note, that the maker was not the party primarily liable thereon.

[Cited in Vary v. Norton, 6 Fed. 810; Union Bank v. Crine, 33 Fed. 811.]

2. Such is the modern English doctrine, and it was followed in the case in judgment.

In bankruptcy. The district court, on the motion of the assignee, expunged the claim of the Valley National Bank on the note for $6,000 held by it, made by Goodwin, Behr, & Co., bankrupts, to the order of Gustavus Hoeber, and by him endorsed to the bank for value. The bank appeals from this order. The further facts appear in the following opinion of the district court:

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

TREAT, District Judge. A motion was made by the assignee to expunge the claim of the bank. Issues have been framed, and the cause heard. Goodwin, Behr, & Co. were the makers, and Hoeber the endorser, of a note for $6,000, which the bank discounted. Before the same became due the bank knew that the makers were such solely for the accommodation for the endorser. The bank then discounted a note of said endorser at ninety days for $5,000, passed the proceeds of the discount to his private account which he kept with said bank, and he gave his check for $6,000, which was charged against said private account. As the endorser's note for $5,000 was not secured by an endorser thereon, the bank retained the original note for $6,000, and seek to have the same allowed against Goodwin, Behr, & Co.'s estate in bankruptcy. There are two propositions, either of which is fatal to the claim: 1st. Hoeber, the endorser, paid the note by his check for the $6,000, which extinguished the bank's demand thereon. 2d. If that be not so, the bank, knowing that Hoeber was primarily liable (Goodwin, Behr, & Co. being mere accommodation makers), received payment of·at least $1,000 thereon from Hoeber, and extended to him the time of payment for the balance for ninety days without the assent of the accommodation makers.

The legal rule in such cases is that if the holder of the note is informed that the maker is only nominally such, but actually an accommodation maker for the endorser, he must deal with the paper and the parties with reference to their true relationships to the obligation. The makers were sureties, and an extension of time to Hoeber, the actual principal, without the assent of the surety, was a discharge of the surety if the bank precluded itself from enforcing at once the original obligation. It is true that matters have been called to the attention of the court which show peculiar equities as between Goodwin, Behr, & Co. and Hoeber, but the bank does not represent said equities. [The decision is against the claim of the bank and judgment must be for the defendant.][2] The authorities are not seemingly in accord. If, however, the bank is held, by information given subsequent to the discount of the $6,000 note, to be dealing with the transaction as if Hoeber were the maker, and Goodwin, Behr, & Co. the endorsers, then the receipt of part payment from Hoeber, and an extension of time to him for a consideration as to the balance due, discharged the sureties. The English courts, while insisting on the strict rule as to the extension of time to the principal without assent of the surety, criticise the reasons given in some cases in support of the rule. May it not be that the true reason is found in the maxim, "in haec foedera

non veni" (I have not entered into this agreement)? A surety enters into an obligation, the elements of which are time, etc. If the obligation is to be prolonged beyond the prescribed time, whereby there can be no legal remedy in his behalf until the end of the new period, is there not virtually an effort to hold him bound to a changed or new contract as to time, when the financial and other conditions of the parties may have undergone an entire change in the interval? The conclusion is, that the bank is not entitled to prove the $6,000 note, or any part thereof, against the estate of Goodwin, Behr, & Co., and judgment will be entered accordingly.

H. A. Haeussler and Finklenburg & Rassieur, for the bank.

Nathaniel Myers, for the assignee in bankruptcy.

DILLON, Circuit Judge. In England an accommodation maker is, in courts of·law, regarded as the principal ˙debtor, although the creditor or holder knew, at the time of· taking the note, that it was given by the maker to the payee without consideration (Byles, Bills. 4th Ed., 191, where the cases are cited; 1 Pars. Notes & B. 325, and notes; 3 Kent, Comm. 104; Story, Bills, §§ 291, 368, 432, 434); and, therefore, the extension of· time by the holder to the acceptor without the consent of the payee and endorser will not discharge the acceptor—nothing will discharge the maker but payment or release. The leading case is Fentum v. Pocock, 5 Taunt. 192, 1 Marsh. 14, which has been frequently approved in England and in this country. The cases are referred to by Mr. Parsons (1 Notes & B. 325), and in White & Tudor's Leading Cases in Equity (volume 2, 4th Am. Ed., p. 1917). There is no decision of the exact point by the supreme court of the United States. The nearest approach to it is in Sprigg v. Bank of Mt. Pleasant, 12 Pet. [37 U. S.] 257; Lenox v. Prout, 3 Wheat. [16 U. S.] 520; and Creath v. Sims, 5 How. [46 U. S.] 192, 206. The American cases rest on the authority of the English cases—particularly Fentum v. Pocock, and those which follow it.

But in equity it is otherwise, and the real relation of the parties to the note, bill, or bond determines their rights in all cases where the holder has knowledge of that relation. And it has recently been expressly decided by the queen's bench, the court of chancery, and by the house of lords, that the rule of law that if the creditor contracts with the principal debtor to give him time, the surety is discharged, applies to bills of exchange and promissory notes; and that it makes no difference, in the application of the rule, that at the time of contracting the debt the surety was believed by the creditor to be the principal debtor. Oriental Financial Corp. v. Overend, Gurney & Co. (A. D. 1871) L. R. 7 Ch. 142, 41 Law J. Eq. 332,

[2] [From 17 N. B. R. 257.]

affirmed in the house of lords (1874) L. R. 7 H. L. 348; Ewin v. Lancaster, 6 Best & S. 571; Bailey v. Edwards, 4 Best & S. 761; Pooley v. Harradine, 7 El. & Bl. 431; Taylor v. Burgess, 5 Hurl. & N. 1; Greenough v. McClelland, 2 El. & El. 424.

The facts in the English case first cited are, in all essential respects, similar to the case now under consideration, and the principle involved is precisely identical. The accommodation acceptors were held to be sureties as against a holder who did not know that they were accommodation acceptors at the time he discounted the bills, but who, after knowledge of that fact, gave time, by valid contract, to the party who was in fact the principal debtor, without the knowledge or consent of the accommodation acceptors; and the holder's action at law against the acceptors was restrained.

I will not enter upon a lengthened discussion of the subject. These cases settle the law of England, and overrule the cases on which the American decisions to the contrary rest. I am inclined to think the doctrine of the court of chancery, and of the house of lords, rests upon sound principles, and that a creditor who actually knows that a given party is a surety on the contract ought not to be permitted to change that contract, or vary the surety's rights by a new contract, without his consent—unless, indeed, the surety has, by express stipulation, as in Sprigg v. Bank, supra, declared in the contract that he is a principal, and thereby estopped himself to plead and show that he was such, and entitled to the privileges and rights of a surety.

I affirm the decision of the district court on the strength of the recent English cases referred to, and regret that the case is such that my judgment cannot be reviewed by the supreme court. Affirmed.

NOTE. The following is extracted from the printed argument of Mr. Myers:

1. While mere indulgence to a principal debtor does not release a surety, yet the surety is released if, without his consent, time is given to the principal by any contract binding on the creditor. This proposition is affirmed in all the authorities bearing on any phase of the question.

2. And where, on the maturity of the original obligation, a portion thereof is paid and a new note of the principal debtor taken for the balance, the original obligation being left as collateral security to the new one, that is an extension of time to the principal, which would preclude the creditor from pursuing the principal till the maturity of the new note, and so would release the surety. Gould v. Robson, 8 East, 576; Andrews v. Marrett, 58 Me. 540; Fellows v. Prentiss, 3 Denio, 512; Stedman v. Gooch, 1 Esp. 3; Putnam v. Lewis, 8 Johns. 389; 1 Pars. Notes & B. p. 239.

3. And it is immaterial that the surety is the maker of the note. If the maker is in fact an accommodation maker, then, as between him and the principal, he is only surety for the principal; and if this relation between the parties is known to the creditor when he first acquires the claim, the foregoing doctrines apply with full force. Grafton Bank v. Woodward, 4 N. H. 301; Horne v. Bodwell, 5 Gray, 457; Wilson v. Green, 25 Vt. 456; Mariner's Bank v. Abbott, 28 Me. 285; Fowler v. Brooks, 13 N. H. 245; Claremont Bank v. Wood, 10 Vt. 582; Peake v. Dorwin's Estate, 25 Vt. 31; Davis v. Barrington, 30 N. H. 524; Bank of Steubenville v. Hoge, 6 Ohio, 18; Garrett v. Ferguson, 9 Mo. 125; Jones v. Jeffries, 17 Mo. 577; Burk v. Cruger, 8 Tex. 66; Smith v. Tunno, 1 McCord, 451; Lime Rock Bank v. Mallett, 42 Me. 349; Riley v. Gregg, 16 Wis. 671; Harris v. Brooks, 21 Pick. 195; Carpenter v. King, 9 Metc. (Mass.) 511; Branch Bank v. Darrington, 9 Ala. 949; Grafton Bank v. Kent, 4 N. H. 221; Flynn v. Mudd, 27 Ill. 323; Kennedy v. Evans, 31 Ill. 269; Kelly v. Gillaspie, 12 Iowa, 57; Miller v. McCan, 7 Paige, 451; Manchester Iron Manuf'g Co. v. Sweeting, 10 Wend. 163; and authorities cited in the principal case. There are a few cases to the contrary: Walker v. Bank of Montgomery, 12 Serg. & R. 382; Bull v. Allen, 19 Conn. 105; Yates v. Donaldson, 5 Md. 401; Lewis v. Hanchman, 2 Barr. [2 Pa. St.] 418. These four cases are squarely in conflict with the principal case. So far as they consider the question at all, they proceed on the theory that one who signs as maker is estopped from showing he is only a surety, because that, it is said, would be to contradict the note. But the fact is, a maker of a note is not necessarily a principal. There are thousands of accommodation notes; and for a maker to show he is only an accommodation maker is not to contradict the note, but to show a fact entirely consistent with his being a maker, and, hence, the principle of estoppel does not apply. If, however, the surety, besides being a maker of the note, contracts expressly as principal, then, of course, he has waived his rights and privileges as surety; and this is all that was held in Sprigg v. Bank of Mt. Pleasant, 10 Pet. [35 U. S.] 257; McMillan v. Parkell, 64 Mo. 286. and Claremont Bank v. Wood, 10 Vt. 585. In the last-mentioned case the note read, "We, each as principal," etc. The court said: "The plaintiff would have been bound to respect the rights of Judd (the maker) as a surety, had these words been omitted." In Sprigg v. Bank of Mt. Pleasant, supra, the bond described all the obligors as "principals." In McMillan v. Parkell, supra, the note read, "We, each as principal," etc.; and also had this clause: "Nor shall any delay or extension of time of demand of payment affect our liability hereon." The history of the question in England is as follows: The earliest case is Laxton v. Peat, 2 Camp. 185, decided by Ellenborough in 1809. That decision supports the principal case. In 1813, Fentum v. Pocock, 5 Taunt. 192, came before Mansfield, and he overruled Laxton v. Peat. In 1831, Tenterden, in Hall v. Wilcox, 1 Moody & R. 58, overruled Fentum v. Pocock, and reaffirmed Laxton v. Peat. In 1836, Oakeley v. Pasheller, 10 Bligh (N. S.) 548, arose in the house of lords. The decision supports the principal case. In 1853, Manley v. Boycot, 2 El. & Bl. 46, reaffirmed Fentum v. Pocock, but the decision of the house of lords in Oakeley v. Pasheller was overlooked. Since then the following English decisions support the principal case: Davies v. Stainbank, 6 De Gex, M. & G. 679, decided in 1854; Pooley v. Harradine, 7 El. & Bl. 431, decided in 1857; Greenough v. McClelland, 2 El. & El. 424, decided in 1860; and, lastly, Oriental Financial Corp. v. Overend, Gurney & Co., L. R. 7 Ch. 142, decided in 1871.

4. Nor is the rule altered by the fact that the creditor, at the time he acquired the note, did not know that the maker was only a surety, provided he learned that fact before he granted the extension of time to the principal. Oriental Financial Corp. v. Overend, Gurney & Co., supra; Oakeley v. Pasheller, supra; Wheat v. Kendall, 6 N. H. 504; Branch Bank v. Darrington, 9 Ala. 949; Millerd v. Thorn,

56 N. Y. 402; Smith v. Shelden, 35 Mich. 42. Oakeley v. Pasheller is about the strongest case in England. In that case, a certain banking firm was indebted to Oakeley in a very large sum. One of the firm died, and his executors gave Oakeley a bond for the payment of the debt. Subsequently an arrangement was made between the surviving partners and the executors, whereby the surviving partners assumed all the firm debts, including that to Oakeley. From that moment, and only from then, the executors became, as between them and the surviving partners, mere sureties for the debt due Oakeley. Oakeley learned of this arrangement, and then granted an extension to the surviving partners. This was held to release the executors. Lord Lyndhurst said: "The question appears to me to be very clear and distinct, and unembarrassed." In Oriental Financial Corp. v. Overend, Gurney & Co.; Lord Chancellor Cairns says that, after Oakeley v. Pasheller, "it is impossible to contend if, after a right of action accrues to a creditor against two or more persons, he is informed that one of them is a surety only, and after that he gives time to the principal debtor without the consent and knowledge of the surety, that under these circumstances the rule as to the discharge of the surety does not apply." The doctrine of Oakeley v. Pasheller is approved in Millerd v. Thorn and Smith v. Shelden, the latter of which is a well-considered opinion by Cooley, C. J.