WIEGEL *v.* ROAD IMPROVEMENT DISTRICT NO. 1, OF PRAIRIE COUNTY.

Opinion delivered October 30, 1916.

1. CONTRACTS—SALE OF COMMODITY—INABILITY OF OBLIGOR TO FURNISH AMOUNT REQUIRED.—Appellant agreed to furnish crushed rock to appellee in certain quantities, but failed to do so because his plant was incapable of furnishing that amount. *Held,* it was appellant's duty to furnish rock, according to the terms of his agreement, and if he was unable to do so, from his own plant, it became his duty to supply the deficiency from some other source, and it was proper for the court to so tell the jury.

2. CONTRACTS—SALE OF ROCK—PROPORTION OF GRADES TO BE FURNISHED.—Appellant agreed to furnish appellee "blue trap rock crushed in sizes one (1), two (2), three (3) and four (4), in such proportion as ordered by the engineer" for appellee. Appellant's plant furnished these four grades in about equal quantities. *Held,* appellee's engineer might order one grade of rock to the exclusion of other grades, and that under the contract, appellant could not compel the appellee to accept the grades of rock in equal quantities.

3. APPEAL AND ERROR—NON-SUIT WHERE COUNTER-CLAIM IS FILED.—In an action for damages for breach of contract, the defendant filed a counter-claim, and prayed for judgment thereon. *Held,* the plaintiff could take a non-suit at any time if he so elected, but he could not thereby dismiss and dispose of appellee's counter-claim, and it is the duty of the trial court to submit that cause of action to the jury.

4. CONTRACTS—BREACH—COUNTER-CLAIM—NON-SUIT BY PLAINTIFF—QUESTION FOR JURY.—Appellant sued appellee for damages for breach of a contract and appellee filed a counter-claim against the

appellant. After the testimony was taken, appellant prayed, and was granted a non-suit. *Held,* the issues involved in the counterclaim being questions of fact, that they should have been submitted to the jury, and that it was prejudicial error to withdraw the case from the jury.

5.   CONTRACTS—BREACH—SALE OF CHATTELS—MEASURE OF DAMAGES—QUESTION FOR JURY.—Appellant agreed to furnish crushed rock of a certain grade to appellee, at 62 cents per cu. yard, the agreement providing that if the rock was below standard that appellee might procure the rock elsewhere, and exact the difference in price from the appellant. Appellee was required to procure other rock, for which he paid $1.00 per cu. yard. *Held,* the measure of appellee's recovery was the difference between the market and contract price, that the ascertainment of that amount was for the jury, and that it was prejudicial error for the trial court to withdraw that question from the jury.

Appeal from Prairie Circuit Court, Southern District; *Thomas C. Trimble,* Judge; reversed.

*Jno. D. Shackelford* for appellant.

1.   The peremptory instruction given by the court was erroneous. The amount of the counterclaim was stoutly denied by plaintiff. The sole right of the defendant to recover on the counterclaim was based on the plaintiff having forfeited the contract. This was a question of fact for the jury. When plaintiff took a non-suit there were two questions remaining, both of which were questions of fact for the jury.

First. Was defendant entitled to recover on its counterclaim?

Second. If so, what was the amount it should recover? These were not questions of law, but of fact, and should have been submitted to the jury.

2.   The amount fixed by the court was erroneous and arbitrary. The remarks of the court were prejudicial.

3.   No forfeiture by appellant was proven. He only agreed to furnish the output of his mill.

4.   The court erred in its instructions to the jury. The court was wrong on the law and the jury was wrong in its verdict. No breach by appellant was shown and he did not forfeit his contract. He shipped

the output of his mill in good faith and no question was raised until he demanded his money.

*J. G., C. B.*, and *Cooper Thweatt* for appellee.

1. The peremptory instruction to find for defendant on the counterclaim was proper as to the amount but was not peremptory as to the right to recover. 22 Enc. Pl. and Pr. 897, p. 911; 32 Ark. 616. There was no issue as to the amount of defendant's claim.

2. Wiegel agreed to furnish the rock. Failure to get cars is not an excuse under the contract. 1 Beach on Cont. Art. 216, 217; 108 Pac. 621; 149 U. S. 1.

3. Wiegel breached the contract daily. 105 Ark. 238. He was in default when payments became due. 88 Ark. 497. When he failed to deliver the rock the district had the right to buy elsewhere and charge him with the increased cost. 88 Ark. 497.

SMITH, J. Appellant, operating as the Pulaski Stone Company, entered into a contract with the appellee road improvement district whereby he undertook to furnish the rock required by the district in the construction of its roads. The portions of the contract which are material here read as follows:

"1st. That for and in consideration of the sum of 62c., per estimated cubic yard of 2,300 pounds, Western Weighing Association weights, f. o. b. cars Little Rock, Arkansas, said contractor agrees to furnish blue trap rock crushed in sizes one (1), two (2), three (3) and four (4) in such proportion as ordered by the engineer for said district.

"2nd. Deliveries of rock are to commence and be made when the Commissioners for said district authorize the engineer or the contractor for said district to place orders with the rock contractor, it being understood that the contractor for said district is to order rock as needed and that all orders placed by him are to be filled promptly.'

"3rd. Payments for rocks are to be made in cash on or about the first and fifteenth of each month and

are to cover the total amount of rock used the preceding month; provided, however, if any defective rock is shipped to the district that the engineer for said district is authorized to refuse or accept any car or part of any car on behalf of the district and notify the rock contractor. It being understood that the district is not to be responsible for any freight on said defective rock or the unloading thereof, but that any expense incurred by the district in handling same may be deducted out of the estimate due rock contractor. * * *

"5th. It is further understood that this contract shall not be terminated until the entire length of the road in said District is completed, and in the event the contractor fails at any time to supply the rock as needed the said district is authorized to purchase rock elsewhere and charge same to said rock contractor, charging said contractor with the difference between the price herein set out and that paid elsewhere."

The parties began operating under this contract, and there soon arose a controversy over the quantity of the rock being furnished by appellant. The first complaint about the quantity of rock furnished was adjusted upon the representation that the rock was being shipped as rapidly as cars were furnished by the railroad company; but later the complaint was renewed, not only as to the quantity of the rock, but also as to the grade. The engineer of the district made requisition for large quantities of No. 3 rock, and for only relatively small quantities of the No. 1. Appellant says that in crushing rock four grades are manufactured, and that it was the duty of the district to take the entire mill run and that the district had no right to order one grade to the exclusion of others, and he also insists that inasmuch as he was devoting his entire output to appellee's demands that he was not guilty of any breach of the contract in his failure to furnish rock in sufficiently large quantities to meet the road district's demands. After the controversy arose appellee ceased making payments regularly, but

professed its willingness to do so if the rock was furnished according to contract, and it excuses its failure to pay by saying that when appellant failed to furnish rock, as he had contracted to do, that the sum then due him was reserved to pay the increased price which the district would be compelled to pay in order to procure the necessary quantity of rock.

(1) Appellant insisted in the correspondence which was offered in evidence that he had complied with his contract, but that appellee's failure to make payments for the stone furnished rendered it impossible for him to continue to do so.   At the time of the institution of this suit there had been furnished a quantity of rock which, at the contract price, amounted to $2,078.47, and judgment was prayed for this amount. Appellee did not deny owing the sum sued for, but filed a counterclaim in the sum of $5,219.12.   Of this sum $403.80 represented the amount the district had been required to pay the owner of the teams who had contracted to distribute the rock, for loss of time due to the failure of appellant to deliver the rock.   The remainder represented the difference in the price of the rock which the district had been required to pay to obtain the necessary quantity of rock to complete the building of the roads.

In his argument to the jury counsel for appellant said:

"He (appellant) gave them all the mill produced, and that was all he could do.   It was not his duty to go out and buy it from some one else."

Whereupon the court said:

"That contract does not depend on the ability of that mill to produce the material.   When he made the contract it was his duty to carry it out, and if he could not furnish it himself it was his duty to get it somewhere else."

Appellant excepted to this remark of the court.

We think no error was committed in this ruling of the court, for we are of the opinion that the court

correctly defined appellant's duty under the contract. The parties had not contracted merely for the output of appellant's plant, but the contract provided that "it being understood that the contractor for said district is to order rock as needed and that all orders placed by him are to be promptly filled." It was, therefore, the duty of appellant, as stated by the court, if he found himself unable to furnish the rock as required by the district to obtain the deficiency from some other source.

(2) Instructions were asked by apellant to the effect that the district was in duty bound to accept the mill run of the rock. It was shown by appellant that he was furnishing the district all of the No. 3 rock which he could manufacture, but in the manufacture of this grade of rock the other grades were also manufactured. The engineer of the district testified that the district proposed to use only two kinds of rock on the road, those being Nos. 1 and 3. No. 3 was a more expensive rock than No. 1.

These instructions were properly refused. The contract did not require the district to take the entire output of the plant, but it required appellant to furnish the rock "in such proportion as ordered by the engineer for said district."

In one of the instructions given by the court it was stated that "the whole question here seems to be as to who committed the first breach," and the case was tried and presented to the jury upon this theory, each excusing himself and blaming the other for the breach of the contract.

After the jury had been deliberating for some time they came in and the following proceedings were had:

Juror: "We have agreed to find on the counterclaim, and we wanted to know if we allowed any damage whether we had to allow the full amount of the damage or not."

Whereupon the court said:

"If you decide for the plaintiff, you will allow him the amount he claims. If you decide on the counterclaim, you will allow him whatever the testimony showed was due. And if there is not any contradiction you will find whatever the evidence showed on the counterclaim."

Appellant excepted to this ruling of the court, and thereupon asked and obtained permission to take a non-suit, and the court then charged the jury as follows:

"Gentlemen of the jury, the plaintiff has taken a non-suit as to his claim, and you will not consider that any further, but will return a verdict for the defendant on its counterclaim for whatever you believe has been proven. You will not consider the plaintiff's part of this case any further. The only case that stands now is the counterclaim of the defendant. You will return a verdict for the defendant for any amount you think has been proven."

Later the jury returned into court with the statement that they had been unable to agree upon a verdict, whereupon the court directed the jury to return a verdict for appellee in the sum of $4,885.69, and this appeal has been duly prosecuted from the judgment rendered upon the verdict so returned.

(3) Appellant had the right to take a non-suit if he so elected; but he could not thereby dismiss and dispose of appellee's counterclaim, and the court should have submitted that cause of action to the jury. *Lay v. Collins*, 74 Ark. 536. We are not here called upon to say what effect appellant's action in taking the non-suit under the circumstances of this case will have upon his right of action hereafter if it is not further prosecuted upon the remand of this cause; but having taken the non-suit the court properly submitted the counterclaim to the jury.

(4-5) We think, however, the court should have permitted the jury to pass upon the question of the amount to be recovered upon the counterclaim. We

think it cannot be said that the evidence upon that question is undisputed, nor can it be said that the verdict was directed for a sum so small that no prejudice could have resulted, and unless one or the other of these conditions obtained a verdict should not have been directed. It is true the district paid $1.00 per cubic yard for the rock which appellant had agreed to furnish at 62 cents; but it does not necessarily follow that the district should recover this difference. There is some conflict in the evidence as to the value of the rock and the extent of the advance in the market price. But in any event the district could recover only the difference between the contract price and the market price, and the jury should have been permitted to say whether the district had bought rock at the cheapest price at which it could be obtained in quantities provided in the contract.

We are also of the opinion that the jury should have been permitted to pass upon the other item in the counterclaim.

And for the error of the court in not submitting those questions to the jury the judgment will be reversed and the cause remanded for a new trial.